# SELLECK *vs.* PHELPS.

APPEAL FROM CIRCUIT COURT, DODGE COUNTY.

Heard January 12.]                                    [Decided June 4, 1860.

### *Attachment—Replevin—Pledge—Parties.*

P. made an assignment of his personal property to I. for the benefit of creditors, and delivered possession; the property was then seized by an attachment against P., and I. replevied the same and gave the bond required by law. On the trial of these actions judgments were rendered against P. in the one, and against I. in the other; and the bail paid the executions in full; but before judgment in the replevin suit the sheriff again seized the goods on another judgment and execution against P., and sold the same to M. After payment of the executions in the attachment and replevin cases, I. brought an action in replevin against the sheriff for the goods sold by him: Held, that I. by giving the bond in the first replevin suit, was entitled to be subrogated to the lien acquired by the attachment.

The rule in *Acker vs. White*, 25 Wend., 614, that the property levied upon and seized by virtue of an execution, and then delivered upon a writ of replevin to a third party, cannot subsequently be levied upon by virtue of another execution against the defendant in the first execution, although the property be permitted, by the plaintiff in replevin, to continue in his possession and occupation, and until the claim under the first execution is disposed of, a second levy cannot be made; declared and followed.

Although a party may have purchased property under such circumstances as would make the sale void as to the creditors of the vendor; yet that fact ought not to give them the right to take property or its value more than once. This rule applies as well to an assignee as to a purchaser; nor is it changed so far as the lien is concerned, although he takes the property and pays the amount for which it is attached, and less than the value of the property itself.

The interest of the pledgor of property may be seized and sold on execution, and the purchaser will be entitled to the possession upon complying with the conditions of the pledge.

The court will not permit a party in whose name an action has been commenced, but who has no actual interest in the result of the action, to dismiss the same, and thus deprive the real parties in interest of their rights.

The complaint in this case was in the usual form, to recover possesion of personal property, and was put in issue by the answer, which also set up fully the judgment and execution

upon which the defendant, the sheriff of Dodge county, made the levy and claimed the possession of the property.

On the trial the following facts and conclusions of law were agreed upon as a case made:

" On the 16th day of November, 1857, at Fox Lake, in the county of Dodge, Peter W. T. Selleck was, and had been for some time previous, a merchant, selling drugs and medicines. On that day he made a general assignment of his property and stock of goods to Isaac Selleck, for the benefit of his creditors. That Isaac Selleck, as such assignee, took possession of the assigned property on that day; that on the third day of December, 1857, Green & Button, of Milwaukee, creditors of the assignor, Peter W. T. Selleck, attached the assigned property in the hands of the assignee, under a writ of attachment from this court; that the amount claimed in the attachment was $704 23; that the value of the property attached, as ascertained by the inventory of the sheriff, was $2,723 73.

" On the 7th day of January, 1858, Green & Button obtained a judgment against the defendant in the attachment suit, for the sum of $812 26, including costs. On the 18th day of . January, 1858, Isaac Selleck, the assignee and plaintiff in this action, replevied the goods of the sheriff, he being the officer who attached the property, by the coroner of Dodge county, who delivered the property and goods to the plaintiff upon his executing an undertaking, as provided in section 117 of the Code of Procedure, that the value of the property therein replevied, was inventoried at $2,276 05. On the 24th day of March, 1858, the defendant levied on the same property under an execution in favor of David S. Moore against Peter W. T. Selleck, the judgment was for the sum of $1,017 12, the property inventoried by this levy at $1,956 08, this execution was issued upon a judgment rendered in Milwaukee county, on the 18th day of March, 1858, and transcript filed in Dodge county. On the 21st day of April, 1858, the replevin suit was tried and judgment rendered against the plaintiff for the return of the property levied, or if the return thereof could not be had, then that the defendant recover of the plaintiff and his bail in the undertaking, the sum of $828 25. On the trial of the replevin suit, the court found the value of the property replevied at $2,276 05, and that the assignment from Peter W. T. Selleck to Isaac Selleck, this plaintiff, was void. On the the 17th day of July, 1858, execution was issued on the judgment against the plaintiff, and his bail in the

undertaking in the replevin suit, and the coroner returned upon the execution that a delivery of the property could not be had ; and the sureties in the undertaking paid the amount of the judgment and execution before this action was brought. On the 26th day of April, 1858, by virtue of the execution in favor of David S. Moore, the sheriff levied upon, sold all the property, before mentioned, to Moore, for the sum of $1,100. Between the time of plaintiff's taking possession of the goods under his writ of replevin, and before they were seized on the execution in favor of Moore, the plaintiff received on a sale of a portion of the goods, the sum of $184 33, and that the goods were never removed from the store in which they were kept by plaintiff. When the sheriff seized the goods on the execution in favor of Moore, the store was closed until the sale on the 26th day of April. At the time of the levy, on the 24th day of March, the plaintiff's attorney gave notice to the sheriff that he claimed the goods by virtue of his writ of replevin and undertaking ; that on the 26th day of April, at the time of the sale of the goods, the plaintiff, by his attorney, gave notice to the defendant of his interest in the goods by virtue of his writ of replevin and bond, and forbid the sale. At the time of this sale the defendant had in his possession an execution on the Green & Button judgment, and this defendant was requested by the plaintiff, that if he made a sale of the goods, to apply the proceeds in the payment of the execution of Green & Button, in the first place. There were expenses incurred for clerk hire, of about $50, between the 18th day of January and the 24th day of March, 1858."

This action is brought by the plaintiff against the defendant to recover the value of goods levied on and sold by virtue of the execution in favor of Moore.

The conclusions of law are that the plaintiff in this action is entitled to recover of the defendant the sum of $643,92, the amount of the judgment against the plaintiff in the replevin suit, less $184,33 which the plaintiff received for sale of a portion of the goods while in his possession. Judgment is, therefore, ordered against the defendant in favor of the plaintiff, for the sum of $643,92, with interest at seven per cent., from the 7th of July, 1858, besides the costs of this action."

After the finding in the case and before judgment was entered the defendant filed a stipulation signed by the plaintiff in person as follows : " It is stipulated and agreed by and be-

tween the parties to this suit, that it shall be discontinued, and settled."

After the entry of the judgment the defendant moved upon affidavits, and the stipulation to set aside the judgment; which was resisted by the affidavits of the bail, showing that the suit was brought for their benefit. The motion was denied. From the judgment and order denying the motion, the defendant took this appeal.

*J. Downer* for the appellant, upon the point, that after the goods were delivered to the plaintiff in the first replevin suit, and the security given they were discharged of the attachment lien, and were no longer in the custody of the law, but liable to be seized for the plaintiff's debts, cited the following authorities: *Waglam vs. Coperthwaite,* 2 Dall., 68 ; *Bradyll vs. Ball,* 1 Br. C. C. 427 ; *Acker vs. White,* 25 Wend., 614 ; *Hogan vs. Lucas,* 10 Peters, 400 ; 3 Munf., 417 ; Drake on Attachment, § 347 to 360 ; *Whitney vs. Farwell,* 10 N. H., 9 ; *Bicknell vs Hill,* 33 Maine, 297 ; *Hull vs. Carnly,* 17 N. Y., 203.

*Sloan & Lander* for the respondent, cited, *Thompson vs. Marsh,* 14 Mass., 269 ; Drake, § 303 ; *Kane vs. Pilcher,* 7 B. Mon., 631 ; *Buckle vs. Luce,* 1 N. Y. Ct. Appeals, 163 ; *Eaton vs. White,* 2 Wis., 392 ; *Briggs vs. Dorr,* 19 John., 95 ; *Anderson vs. Van Allen,* 12 id., 332 ; *Dawson vs. Coles,* 16 id., 51 ; 19 id., 95 ; *Welch vs. Madeville,* 1 Wheat., 235 ; S. C., 5 id., 277.

By the Court, PAINE, J.    Peter W. T. Selleck made an assignment of a stock of goods to Isaac Selleck, the respondent, for the benefit of his creditors. The assignee went into possession, and afterwards the property was attached under a writ of attachment in favor of Green & Button to secure a debt claimed of $704,23. Isaac Selleck replevied it, and gave the necessary undertaking to obtain possession and the property was re-delivered to him. It was subsequently levied on by the defendant under an execution against P. W. T. Selleck in favor of David S. Moore, and sold to Moore, the plaintiff claiming an interest in the property by virtue

of the undertaking given in the replevin suit, and forbidding the sale. Judgment was afterwards recovered in the replevin suit against the plaintiff on the ground that the assignment was void, and execution was issued, and a return not being had, the bail of the plaintiff paid the execution in full. This suit was then brought against the sheriff for taking and selling the property on the execution in favor of Moore, the respondent claiming that by giving his undertaking in the replevin suit, and paying the judgment of Green & Button, he was entitled to be subrogated to the lien acquired by their attachment. The circuit court held that he was so entitled, and gave judgment for the amount of the Green and Button judgment deducting an amount received by the plaintiff on sales before the levy under the execution. The question presented is whether this ruling was correct?

The counsel for the appellant concedes that the position is sustained by the case of *Acker vs. White*, 25 Wend., 614, but he assails the doctrine of that case as unsound and certainly inapplicable to a case where, as in this the whole value of the property replevied much exceeded the debt for which it had been attached. But we have carefully considered the rule established by that decision, and have come to the conclusion that it is the only one that could have have been established consistently with the due administration of justice. Although a man may have purchased property under such circumstances as make the sale void as to the creditors of the vendor, that fact ought not to give the creditors any more than the right to take the property or its value once, and apply it in payment of the vendor's debts. That is all they could have done if the sale had not been made at all. That is all they could do if they should attach or levy upon it in the hands of the vendee, he not choosing to replevy it. The effect of the void sale is that it leaves the property liable to be taken by creditors. But beyond this the purchaser is not held re-

sponsible either by the policy of the law, or the requirements of justice. If then he chooses to assert the validity of the sale and to test it legally, replevies the property, and obtains possession of it by giving such security as the law deems adequate, the security then stands in the place of the property so far as the creditor who has seized it is concerned, and the person giving the security ought in justice to stand in the place of such creditor so far as the property is concerned. And this seems obvious from the great injustice of the contrary doctrine. For if this was not so, although the purchaser who had replevied had on losing his suit paid the full value of the property to one of the vendor's creditors, it would still be liable in his hands to be taken by another, and so be made to pay the vendor's debts indefinitely, if the purchaser should continue to replevy it. Now that there is nothing in the law which would sanction such a result, seems evident from the well known rule in favor of an ackowledged wrong doer. Thus if a trespasser has taken property and is sued for the trespass, and pays the judgment recovered, that vests the title in him. And the law does not say that because he is a wrong doer, he must pay the judgment, and that the creditors of the orginal owner may take the property as often as he chooses to replevy it, and apply it on their claims. Neither the favor of the law for the payment of just debts, nor its disfavor for unjust trespasses, have induced it to disable the wrong doer from atoning by the full payment once of the value of the property.

The counsel suggests that the analogy between this rule and the doctrine of *Acker vs. White,* is "fanciful and remote." But it seems to us clear and direct. And if the rule as to the trespasser is correct, *a fortiori* the doctrine of *Acker vs. White,* is correct. For a purchaser, or assignee, under such circumstances, cannot be in any worse position than a willful wrong doer. Many times, certainly, they are not as

bad. For it is well known that the rules of law in relation to the sales of property to hinder and delay creditors, are justly of a stringent character, and if a vendor sells with such intent, and the vendee had notice of it, the property is liable to be taken in his hands, even though he paid the full value for it. Many times, also, assignments are held invalid for non-compliance with some statutory permission, or on account of some provision in the instrument, although the parties, and particularly the assignee, may have acted in entire good faith. It seems to us clear, therefore, that a purchaser or assignee of this kind, who insists upon the validity of his purchase, and after bringing his action and failing, pays for the property, ought to have as much protection as an acknowled trespasser.

But it was contended that, even if the doctrine was proper in a case like that of *Acker vs. White*, where the party replevying paid the full value of the property, still it could not be applied where, as in this case, the amount of the debt on which it was first attached, was much less than the value. It was said that in such case, by virtue of his replevin, the party would obtain possession of the goods, a large interest in which was still liable to be taken for the debts of the vendor, and that he ought not to be allowed to hold such interest beyond their reach until the determination of the first suit. With respect to the justice of the matter, however, it is obvious that it is the same, whether the party pay the whole value, or only a part. ·If on paying the whole he ought to be entitled to the whole property, by the same reasoning, on paying a part, he ought to be entitled to an interest equal to the amount paid. And we can see nothing in the recognition of this right inconsistent with the protection of the rights of other creditors, to apply the interest still remaining in their debtor in payment of their claims. They certainly would be in no worse position than in any ordinary pledge

or mortgage of chattels, where the interest of the mortgagor or pledgor is liable to be taken to satisfy his debts. As to the pledge of property, the statute expressly provides that the interest of the pledgor may be sold, and that the purchaser will be entitled to the possession on complying with the terms and conditions of the pledge. R. S., 1858, chap. 134, § 21. And this evidently contemplates that property so situated may be levied on, and sold without actual possession taken by the officer. So, also, in *Cotton vs. Marsh*, 3 Wis., 241–2, it was held that the creditor of the mortgagor may attach the property in the hands of the mortgagee, subject to the right of the latter. The inconvenience of proceeding against property subject to a prior lien or right, is one to which creditors are frequently subjected. And the fact that such inconvenience might result from the application of the doctrine of *Acker vs. Smith*, to a case like this, where the property replevied is of greater value than the debt on which it is attached, we do not deem a sufficient reason for rejecting a rule, the denial of which would work such manifest injustice. It is true the actual interest of the party replevying, as well as of the orginal vendor, would remain unsettled, depending upon the result of the attachment suit. But they would be equally so if the property had not been replevied, but left in the hands of the officer first attaching. The rights of subsequent attaching creditors, would still depend on the same contingency. They would get only what was left, after satisfying the first debt. And although, if the property is replevied, the interest acquired by such attachment is recognized to exist in the party replevying and giving security, and although the remedy of creditors to reach any remaining interest of the debtor, may not be so convenient, as if the property should remain with the officer, yet we think their remedy is sufficiently certain to do away with all reason for refusing to

apply the equitable rule of *Acker vs. White*, although the property was of greater value than the attachment debt.

And it would certainly be very extraordinary, if, where a party had so replevied property and given an undertaking to return it or pay for it, as he was permitted to do by the law, that very law would then forcibly take it from his possession to pay other debts of the same debtor, recognizing in him no right to keep it, and return it according to his undertaking, and no interest by virtue of giving that undertaking, and then, afterwards require him to pay for the default, which itself had forced upon him. The injustice of such a rule is too apparent to require argument. Unless the rule of *Acker vs. White* be applied in such cases, then no subsequent levy should be allowed at all, for the remarks of the supreme court of the United States, in *Hagan vs. Lucas*, 10 Pet., 404, are then applicable in their full force. That court says: "If the property be liable to execution, a levy must always produce a forfeiture of the condition of the bond. For a levy takes the property out of the possession of the claimant, and renders the performance of his bond impossible. Can a result so repugnant to equity and propriety as this be sanctioned? Is the law so inconsistent as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time exact a penalty for the failure? This would indeed be a reproach to the law and to justice. The maxim of the law is, that it injures no man, and can never produce injustice."

We think, therefore, that the ruling of the circuit court upon this point was right; also, that it properly disregarded the stipulation for a settlement by Selleck. His bail were the real parties in interest. They had paid the attachment debt and he was liable to them for it. He agreed with them, as appears by the affidavits, that they might bring this suit in

his name for their benefit. And we think that this was an agreement that should be enforced under the peculiar circumstances disclosed by the affidavits in this case.

The judgment is affirmed with costs, in each of the cases between these parties, both depending on the same questions.

