## BLODGETT and another vs. HITT.

*Executors and administrators, sale of land by—Jurisdiction, presumption of—Statutes, retrospective—Subrogation.*

1. In a proceeding for the sale of real estate by an executor or administrator for the payment of debts, notice to parties concerned, or their guardians, of the petition for license to sell, is jurisdictional, and the want of it is fatal to the whole proceeding.

2. Sec. 1, ch. 127, Laws of 1861, provides that sales made either before or after its passage, of the estate of a deceased person, in pursuance of the order of a probate court, by an executor or administrator, shall be held as valid and effectual as if made by the judgment or order of a court of general jurisdiction; and that the title of the purchaser at such a sale shall not be invalidated by reason of any error or defects of a certain specified kind, except in the manner and for the causes that would invalidate them if made by the judgment or order of a court of general jurisdiction. Whether this provision is valid, so far

as it relates to sales made *before* the act, it was not necessary to decide in this case; but the court inclines to regard it as valid.

3. If the act is valid, this court would *presume*, where the probate court had made an order directing an administrator's sale of land, that due notice of the petition therefor was given to the parties interested, and that other jurisdictional facts existed, in case the record is merely *silent* in respect thereto.

4. But, if the want of jurisdiction appears affirmatively from the record, that is fatal to the proceedings, even if the court is to be treated as one of general jurisdiction.

5. The notice of an administrator's sale of land must state the *time* and *place*, or the sale will be void.

6. Where, therefore, the record sets• forth the notice of sale, and it ad- pears. that either the time or place was not stated therein, the sale must be held invalid.

7. In ejectment, where the defense depends upon the validity of an ad- ministrator's deed, and the record of the probate court shows the deed invalid, the jury may properly be directed to find for the plaintiff.

8. Under section 16, chap. 141, R. S., one who recovers land in ejectment can recover as *mesne profits* only the value of the use of the land for the six years preceding the commencement of the ejectment suit, *exclusive* of the value of the use of any *improvements* made thereon by defendant.

9. Where defendant purchased the land• in good faith• at an administra- tor's sale, without actual notice of defects in the proceedings which rendered the sale void, and the moneys paid by him were used partly in discharging a mortgage upon the land, and partly in paying other debts of the estate and expenses of administration, which were chargeable upon said land; *Held*, that he is entitled to be subrogated to the rights of the mortgagee and other creditors of the estate whose claims were thus paid, and (in case the facts are properly set up in the answer as a ground for such relief) he is entitled to be paid the moneys thus advanced before being turned out of the possession. *Wilkinson v. Filby*, (24 Wis., 441) distinguished.

10. The answer in this case having set up an equitable defense only as to that part of the purchase money which was applied in discharging the mortgage (defendant claiming as to that amount the rights of a mortgagee in possession), and a new trial being granted for certain errors, an *amendment* of the answer should be allowed before a sec- ond trial, by which defendant may claim similar relief as to *all* the purchase money.

11. Plaintiffs claiming only an undivided half of the lands purchased by defendant at the administrator's sale, they should be charged, in an

Blodgett and another vs. Hitt.

accounting between the parties, with one half of the purchase money paid by defendant (and so applied in discharge of debts and charges against the estate), with simple interest thereon at the rate of seven per centum from the date of such payment to the time of stating the account; and they should be credited with one-half the value of the use of the land during the time it was occupied by the defendant, excluding the six years before the commencement of the action for which the jury are to assess the value of the mesne profits. The court should make an equitable adjustment between the parties of the interest on the purchase money chargeable to the plaintiffs, and on the value of the rents chargeable to the defendant as an offset thereto.

12. If, upon such accounting, any sum is found due defendant, plaintiffs should not have execution until it is paid; and if such sum, with interest thereon, remains unpaid for three years after the amount is ascertained, they should be forever barred from recovering possession of the land, as in case of a claim for improvements, under sec. 32, ch. 141, R. S.

13. Defendant is also entitled, under said ch. 141, R. S., to be paid for permanent improvements, and for taxes paid by him.

14. After the several *items* of account between the parties have been ascertained, in accordance with the principles above stated, the circuit court has power to determine the *aggregate* sum which plaintiffs must pay defendant before they can turn him out of the possession.

APPEAL from the Circuit Court for *Fond du Lac* County. Action by the two heirs of a deceased person to recover possession of the undivided one-half of certain lands formerly owned by such deceased, with damages, and mesne profits.

The defendant claims title under an administrator's sale and conveyance, and as mortgagee in possession under a mortgage executed by the deceased. The pleadings, evidence and charges to the jury sufficiently appear in the opinion of the court. Defendant's motion for judgment on the pleadings, upon the ground that his answer set up a counter-claim which was not controverted, and his subsequent motion for a nonsuit on the ground that plaintiffs had made no proof of title, were both denied. Judgment having been rendered for plaintiff, the defendant appeals therefrom.

*Gillett & Taylor*, for appellant, argued that defendant was en-

titled to judgment on the pleadings, because his counter-claim was not controverted; that his motion for a non-suit should have been granted, because the plaintiffs rested without making any proofs of title; that the proceedings in the probate court for the sale of the land in controversy were valid and effectual to pass the title to the defendant under the decision of the territorial supreme court, in case of *Grignon's Lessees v. Astor*, (1842, Burnett, 24) affirmed by the U. S. supreme court, 2 How., 319, sustained by *Chicago v. Sheldon*, 9 Wall., 50; *Gelpcke v. Dubuque*, 1 Wall., 175; that the defendant was a mortgagee in possession, and no payment or tender of the amount due was shown, citing *Gillett v. Eaton*, 6 Wis., 30; *Tallman v. Ely*, id., 244; *Stark v. Brown*, 12 id., 572; *Hennesy v. Farrell*, 20 id., 42; that the plaintiffs are estopped from bringing an action until payment or tender of the amount paid by defendant, citing *Wilkinson v. Filby*, 24 Wis., 441; that they were entitled to recover, if at all, only the value of the use of the land irrespective of the improvements, citing *Pacquette v. Pickness*, 19 Wis., 219.

*E. S. Bragg*, for respondent, argued that, inasmuch as both parties, by their pleadings, claimed title from a common source, no proof of title anterior to such source is necessary, citing *Wilkinson v. Filby*, 24 Wis., 441; that the defendant's answer does not set up a counter-claim, but merely a defense, since it alleges no cause of action, and seeks no relief except such as he would be entitled to under a general denial, citing R. S., ch. 141, sec. 7; id, ch. 125, sec. 11; Smith & Tiffany's Practice, 378 *et seq.*; *Burrall v. DeGroat*, 5 Duer, 382; *Bates v. Rosekrans*, 23 How., P. R., 98; that if the defendant be considered as a tenant in common with plaintiffs, his claim of exclusive title and right of possession in himself constitutes an *ouster*, citing 1 Lomax Dig., 503–4 and cases cited; that the administrator's deed was absolutely void as against heirs, because they were not before the court; that the sale was void for non-compliance with the statute then in force, and the defects were not cured

by the order of confirmation; that the court, under whose authority the sale was had, was one of inferior and limited jurisdiction, and the regularity of its proceedings would not be presumed, but must affirmatively appear, citing R. S. 1839, p. 296, etc.; Laws of Mich. of 1833, p. 190; *Morse v. Presby*, 5 Foster, 302; *Eaton v. Badger*, 33 N. H., 237; *Hendricks v. Cleveland*, 2 Vt., 329 ; *Sears v. Perry*, 26 Conn., 273 ; *Simons v. DeBare*, 4 Bosw., 547; *Wattles v. Hyde*, 9 Conn., 10; *Starbuck v. Murray*, 5 Wend., 148; *Bodurtha v. Goodrich*, 3 Gray, 508 ; *Williamson v. Berry*, 8 How., (U. S.), 540 ; *Ransom v. Williams*, 2 Wall., 313 ; that a want of notice of the application for license to sell invalidates the sale, citing *Lessee of Adams v. Jeffries*, 12 Ohio, 253 ; *Bloom v. Burdick*, 1 Hill, 139; *Smith v. Rice*, 11 Mass., 511 ; *Sitzman v. Pacquette*, 13 Wis., 291 ; *Gibbs v. Shaw*, 17 id., 197; that chap. 127, Laws of 1861, was void so far as it acts retrospectively, or, if not, that no presumption of jurisdiction could be sustained when the record shows the want of it, citing *Sidney v. Waffle*, 16 N. Y., 180; *Babitt v. Doe*, 4 Ind., 356 ; *Harvy v. Tyler*, 2 Wall., 328 ; that the sale was void not being in pursuance of the license granted, but purporting to be under a license of a different date, and no bond having been given or oath taken by the administrator after authorization and before sale, citing *Wilkinson v. Filby*, 24 Wis., 441; *Blackman v. Baumann*, 22 id., 611; that the defendant could not claim as mortgagee in possession, having paid the mortgage and obtained a satisfaction from the mortgagee; that the rule of damages adopted by the court was correct, and the plaintiff should recover for the use of the land in the condition it was in at the commencement of the six years prior to the action to which he was limited by statute, excluding buildings and orchards; and, notwithstanding the statute, he was entitled to set off the value of the previous use against claims for improvements, citing *Hylton v. Brown*, 2 Wash., 165 ; *Ewalt v. Gray*, 6 Watts, 427 ; *Ridgeley v. Bond*, 18 Md., 435 ; *Whiting's Heirs v. Taylor's Heirs*, 8 Dana, 441 ; *Same v. Same*, 9 id., 399 ;

*Parsons v. Moses*, 16 Iowa, 440; *Dungan v. Van Puhl*, 8 Clark, 271.

*Gillett & Taylor*, in reply, argued that the act of 1861 was passed for the express purpose of aiding titles under sales by executors and administrators, and was valid; that the rule of damages adopted was in direct conflict with the statute, sec. 16, chap. 141, R. S. 1858; and that in justice and equity the purchaser at the administrator's sale should have his money refunded before the heir should be permitted to recover possesssion, it having gone to pay debts, all of which were liens upon the real estate.

LYON, J. The plaintiffs are the twin children of the late Pearley P. Blodgett, of Fond du Lac county, who died intestate in 1847 or 1848, and are the heirs-at-law to one-half of his estate.

Pearley P. Blodgett died seized of the northeast quarter of section 23, in town 14 north, of range 16 east, in said county; and after his decease, the northeast quarter of the quarter section (except about two acres) was assigned to his widow as and for her dower interest in the quarter section.

The widow, and one Jonathan Allen, were appointed administratrix and administrator of the estate of Blodgett; but, by the marriage of the widow soon after, Allen became sole administrator.

On a representation to the probate court or judge of Fond du Lac county, that the personal estate was exhausted, and that there were debts against the estate remaining unpaid, the probate judge authorized and licensed the administrator to sell the above quarter section of land, except such dower interest, and the administrator accordingly sold and conveyed the same to the defendant in the year 1848, and the defendant soon after went into the actual and exclusive possession of the land, which he has ever since held, and has made valuable and permanent improvements thereon.

The plaintiffs brought this action in May, 1868, and within six months after they arrived at the age of twenty-one years, to recover the possession of an undivided one-half of the land so occupied by the defendant, and damages for the unlawful withholding thereof, including mesne profits received by the defendant, which are claimed to be two thousand dollars. The complaint is in the usual form of complaints in actions of like character.

The defendant answered to such complaint: 1. A general denial, and an allegation that he is the owner in fee of the lands claimed. 2. That he is such owner by virtue of the proceedings in the probate court of Fond du Lac county in that behalf, and the sale and conveyance thereof to him by the administrator of the estate of *Pearley P. Blodgett*, as above stated. 3. That he is mortgagee in possession of the lands in controversy, by virtue of a mortgage thereon executed by the intestate in his life time to one *Boyd*, which mortgage is owned by the defendant and unpaid. The answer admits that *Pearley P. Blodgett* died seized of the land in controversy, thus dispensing with the necessity for proof of that fact. All of the allegations of the answer are stated as defenses to the action, and none of them were interposed by way of counter-claim. Hence no reply thereto was required.

On the trial, the plaintiffs proved their ages and heirship as above stated; and in addition, introduced certain testimony bearing upon the question of damages, which will be more fully stated hereafter. It also appears by the answer, and the evidence introduced on the trial, that the defendant has been in the actual and exclusive possession of all that part of the quarter section conveyed to him by the administrator, since early in the year 1849, claiming title thereto by virtue of such conveyance, to the exclusion of any interest, title or right of the plaintiffs therein.

This evidence and these admissions contained in the answer clearly made a *prima facie* case for the plaintiffs, and entitled them to a verdict in the absence of further testimony.

To rebut the *prima facie* case thus made out for the plaintiffs, and to maintain the issue on his part, the defendant offered and read in evidence the records in the said probate court of certain papers and proceedings pertaining to the said estate, and to the sale of the land in controversy by the administrator to the defendant; and also two conveyances thereof by the administrator to him, one bearing date November 18, 1848, and the other March 21, 1849; each reciting that it was made pursuant to a license from the probate court or judge, dated September 17, 1848. The deeds are not set out at length in the bill of exceptions, and are not attached thereto as exhibits; but we infer that both were executed upon the same sale, to-wit, the sale of November 18, 1848, for the reason that the administrator's report of sale, made to the probate court, shows that the sale of the land described in the deeds was made by him to the defendant on that day.

It is quite unnecessary to set out fully such record evidence. It is sufficient to say that it purports to be a history of the proceedings before the judge of probate of Fond du Lac county, having for their object the sale by the administrator of the real estate in controversy, and that these proceedings are in many particulars exceedingly defective and irregular. As a single example, this record fails entirely to show that any notice of the petition of the administrator for license to sell the real estate was given to the parties concerned, or their guardians, as required by the law then in force. (Ter. Stats. of 1839, p. 317, sec. 29), and this court has held that such notice is jurisdictional, and that the want of it, in a case of this character, is fatal to the whole proceeding. *Gibbs v. Shaw*, 17, Wis., 197. The record is also silent in relation to other proceedings equally as essential to a valid sale and conveyance of the land.

The answer made by counsel for the defendant, to the objection that this record fails to show a valid sale and conveyance is, that, although the probate court of Fond du Lac county was a court of limited jurisdiction, and hence, at the common law,

no presumptions could be indulged in support of its jurisdiction where its records fail to show it, yet, by virtue of the statute (Laws of 1861, chap. 127), which is claimed to be applicable to the case, such court and its records stand upon precisely the same footing, in respect to presumptions in favor of jurisdiction, as though it was a court of general jurisdiction.

Section 1 of that statute is as follows: "Every sale heretofore made, or hereafter to be made, of the estate of any deceased person, in pursuance of any order or authority of any county court or court of probate, by any executor or administrator, or any person acting as such, in pursuance of any such order, license or authority shall be deemed and held to be as valid and effectual as if made by the judgment or order of a court having general jurisdiction; and the title of any purchaser at any such sale made in good faith, shall not be impeached or invalidated by reason of any omission or error in the appointment of such executor or administrator, or by reason of any defect or irregularity in the proceedings before such court, or any allegation of the want of jurisdiction on the part of such court, except in the manner and for the causes that the same could be impeached or invalidated in case such sale had been made pursuant to the order or judgment of any court of general jurisdiction."

There can be no doubt that the sale by the administrator and the purchase by the defendant, were made in the most perfect good faith, the one believing that he was conveying, and the other that he was receiving a perfect title to the land in controversy. The law of 1861, is in terms applicable to the case; and the only objection made to it is, that the legislature lacked the constitutional power to enact it. After a careful examination of very many authorities on the subject, we are inclined to the opinion that this objection is untenable, and that the legislature possessed the constitutional power to make the law applicable to sales which were made before the same was enacted. See Cooley's Const. Limitations, Title "*Retrospective Laws,*" pp. 369

to 383, and cases cited.   See also *Satterlee v. Mathewson*, 2 Peters, 380; *Wilkinson v. Leland*, id., 627.

Had these proceedings been in a court of general jurisdiction, it is well settled that we should be authorized to presume that due notice of the petition of the administrator for license to sell the real estate, was given to the parties interested, and also to presume the existence of any other jurisdictional fact concerning which the record is silent; and, if the law of 1861 is applicable to the case, the same presumptions must be indulged to sustain the jurisdiction of the probate court of Fond du Lac county, and the validity of the sale and conveyance to the defendant.

But we have taken a view of this case which renders it quite unnecessary to decide upon the constitutionality of the law of 1861, as affecting the validity of the proceedings in the probate court; and although we have intimated an opinion that the legislature had power to make the law operate retro-actively, yet we leave the question open, to be determined when a case shall arise which requires a decision of it.

It is only in cases where the record is silent in relation thereto, that the existence of facts is presumed in favor of jurisdiction.   If the want of jurisdiction appears affirmatively by the record, it is fatal to the proceedings.   In such case there is no room for presumptions.   *Rape v. Heaton*, 9 Wis., 328; *Falkner v. Guild*, 10 id., 563.

The record in this case, read in evidence on behalf of the defendant, shows affirmatively that the administrator's notice of sale fails entirely to specify the *place* at which the land in controversy would be sold.   The notice is as follows:

## "ADMINISTRATOR'S SALE.

"By authority of an order of the judge of probate of Fond du Lac county, made Sept. 17, 1848, I shall offer for sale, and sell at public vendue to the highest bidder, on Saturday, the 18th day of November next, at one o'clock, P. M., all the N.E.

quarter of Sec. 23, Town 14 north, Range 16 east, excepting the widow's right of dower to 37 acres in the N.E. qr. of said N.E. qr. of said section.

"JONATHAN ALLEN,

"*Administrator of the estate of Pearley P. Blodgett.*

A notice of the *time* and *place* of sale must be given, in the manner required by the statute, or the sale will be void, and a conveyance to the purchaser thereat will fail to vest in him the title to the premises sold. The giving of such notice is a condition precedent to the validity of the sale and conveyance. It is the means which the law then prescribed, and still does prescribe, in order to secure the best possible price for the property. The omission of the place of sale therefrom entirely destroys the value of the notice; and a sale made pursuant to such defective notice has no greater validity than a sale made without the publication of any notice whatever. It requires neither argument or citation of authority to demonstrate the correctness of these propositions.

It is also to be observed that the notice specifies "Saturday, the 18th day of November *next*," as the day of sale, and is not dated. Hence, the *year* in which the sale is to be made is not stated directly, but is left to be ascertained by inference from other facts.

Were the records silent on the subject, we might, perhaps, presume a legal notice; but when they show affirmatively that the sale was made upon a notice which was fatally defective, as before remarked, there is no room for presumption. Even the doctrine of the case of *Grignon's Lessee v. Astor* (2 How., 319), to which the learned counsel for the defendant cling so tenaciously, is not sufficiently broad to reach and heal a defect so vital as this.

The cases of *Rape v. Heaton* and *Falkner v. Guild, supra,* are decisive of the question. It must be held that the sale and conveyances by the administrator to the defendant, of the premises in controversy, are void, and that they fail to divest

the plaintiffs' title thereto as heirs-at-law of Pearley P. Blodgett.

The circuit judge was therefore correct in holding that the evidence showed that the title in fee to the premises claimed, was in the plaintiffs, and in directing a verdict in their favor.

The question is, whether the correct rule was adopted in the court below for assessing the plaintiffs' damages for the rents and profits of the land recovered by them, for the six years immediately preceding the commencement of the action.

It appears by the evidence that when the defendant purchased the land, it was covered with timber of the character denominated "heavy openings," was stony and entirely unimproved. Since that time he has improved the land by cutting off the timber; digging and taking therefrom the stumps and stones; ·fencing the land with rails, boards and stones, into convenient fields; building a house and a barn, digging wells, and putting out an orchard, consisting of 500 or 600 fruit trees.

The judge instructed the jury as follows: "You will also find the value of the rents and profits of said land, which the defendant admits he received, and in fixing the amount you will find the value of the same as said premises were on the 22d day of May, 1862, (that being six years prior to the commencement of this action), independently of the use of the house, barn or orchard. And you will confine yourselves to the evidence given here in court, bearing in mind that the plaintiffs are only entitled to the use of an undivided one-half of the value, as fixed for the whole premises in dispute."

The jury assessed the plaintiffs' damages at eleven hundred and twenty dollars.

The statute provides that in estimating the plaintiff's damages in this class of actions, "the value of the use, by the defendant, of any improvements made by him, shall not be allowed to the plaintiff." R. S., ch. 141, sec. 16. It is very clear that the defendant did not, upon the trial, have the full benefit of this statutory provision in his favor. The instruc-

tion to the jury only excluded from the assessment of damages against him, the use of the house, barn and orchard, and left him liable to pay for the use of all other improvements made by him. The instruction should have been that the value of the use of *all* improvements made by him, upon the land, must be excluded in assessing the rents and profits thereof for the period indicated, so that the plaintiffs be allowed nothing for the use thereof.

For this error, the judgment of the circuit court must be reversed, and a *venire de novo* awarded.

There has been considerable discussion upon the subject of the rule of damages in such cases, and the principles upon which the value of the rents and profits, for which the defendant in ejectment is chargeable, is to be ascertained. But we apprehend that there is little difficulty in the way of a correct application of the statute. The true inquiry is: What has been the value of the use and occupation of the land for the six years immediately preceding the commencement of the action, exclusive of the value of the use of any and all improvements made thereon by the defendant? Upon this basis the defendant is not charged with the rent of his *improvements*, but is charged with the rent of the *land* occupied by him. *Dungan v. Von Puhl*, 8 Clarke, 263.

Considered only as an action at law, the foregoing observations dispose of the case. But the defendant has interposed an equitable defense, which, under our system of practice, he has the right to do. Such defense does not go to the validity of the plaintiffs' legal title to the land in controversy, but is, in effect, that he has paid moneys under circumstances which make the same an equitable charge upon the land, and that his possession of the land ought not to be disturbed until such moneys are refunded to him. He claims to be the owner of an unpaid mortgage thereon, and that he is in possession of such lands by virtue thereof. It is freely conceded by counsel for the plaintiffs, that if the defendant is in possession under such

circumstances, his possession will be protected in equity, and cannot be disturbed until the mortgage, under which he holds, shall be paid.

The evidence on this subject is, that the defendant bid off the land at the administrator's sale, for three hundred and sixty-five dollars; that out of this sum he paid the Boyd mortgage, amounting to nearly two hundred and fifty dollars; and that he paid the balance of the purchase money to the administrator. The whole of the purchase money was applied to the payment of the mortgage, of other debts against the estate, and of the expenses of administration. The land in question stood chargeable with the payment of such mortgage debts and expenses. The payments made by the defendant on account of his purchase, enured to the benefit of the owners of the land. There is no manner of doubt but the defendant purchased the land, and paid his money therefor, in perfectly good faith, supposing that he was obtaining the whole title thereto; and there is no pretense that he had any actual notice of the defect in the proceedings before the sale which invalidates his title.

The question then is, whether under such circumstances, the defendant is entitled to be repaid the money which he has paid in good faith to relieve the land from incumbrances, before he can be turned out of the possession thereof.

Suppose, for illustration, that the liabilities against the estate of *Pearley P. Blodgett*, after the personal estate was exhausted, were just $365; for the payment of which the land which the administrator attempted to convey to the defendant was chargeable. The interest of the heirs of Blodgett in the land was precisely that sum less than a full and perfect title thereto. That is to say, the creditors of the intestate owned an equitable interest therein to the amount of $365; and the heirs were the owners of the residue. Now, when the defendant, supposing in good faith that he was thereby obtaining a title to the lands, paid those debts and took a conveyance of the land from the administrator, and when it turns out that, by reason of the

failure of the administrator to perform and fulfill an essential pre-requisite to a valid sale, the defendant gets no title by such conveyance, and the heirs recover the land, it must be admitted that there is no justice in giving the land to heirs cleared of the incumbrances which the defendant has paid, without requiring them to repay the sums thus paid by him for their benefit. Otherwise the heirs would recover a greater interest in the land than they inherited, by the sum $365; and the defendant would be out of pocket to that amount, paid by him for their benefit. The fact that the purchase money paid by the defendant only cancelled a small percentage of the indebtedness against the estate, does not change the principle.

But the question is not alone, What is the natural and inherent justice of the case? but it is, are the principles and rules of equity jurisprudence, as recognized and enforced by courts of equity, sufficiently broad and comprehensive to reach the case, and compel the heirs to repay the sums which the defendant has thus paid for their benefit, before they will be permitted to take possession of the land in controversy?

We are of the opinion that this latter question must be answered in the affirmative, both upon principle and by authority. A brief reference will be made to a few of the leading cases wherein it has been so held. *Hudgin v. Hudgin*, 8 Grattan, 320, was a case where a person, by will, charged his lands with the payment of his debts. After his death, a creditor procured an order from the proper court for the sale of some portion of the lands thus made chargeable with the debts of the testator. The lands were sold and the proceeds applied to the payment of such debts. The sale and conveyance executed pursuant thereto were subsequently held void, and, in ejectment brought by some of the devisees of the land against the purchaser at such sale, or the person claiming under him, the devisees recovered judgment. The defendant in the ejectment filed his bill in equity, and obtained an injunction restraining proceedings upon such judgment; and, upon proof of these facts, the court of ap-

peals of Virginia directed a decree declaring the purchase money so paid by the complainant or his grantor, on such void sale, and the interest thereon, after deducting therefrom the rents and profits of the land while occupied by the purchaser or his grantee (exclusive of improvements made by them respectively), to be a charge on the land, and providing that, unless the same should be paid by the devisees within a reasonable time, the land be sold for the satisfaction thereof on terms to be prescribed for the purpose. This case is decided upon the principles that the purchaser whose money has paid the incumbrances upon the land has the right to be substituted to the rights of the creditor whose debt he has paid; and, because equity will not permit such creditor or incumbrancer, lawfully in possession, to be disturbed therein until his debt or incumbrance is fully satisfied, it will not permit such purchaser, who has paid the incumbrance in good faith and is thereby subrogated to the rights of the creditor, to be dispossessed until he is re-imbursed for the moneys so paid by him.

*Valle's Heirs v. Fleming's Heirs*, 29 Mo., 152, is to the same effect. This is a very important and interesting case, and will justify a somewhat extended notice. The action was in the nature of ejectment. The plaintiffs claimed as heirs of Valle, who died seized of the lands in controversy in the action. The defendants were in possession under certain conveyances executed to their ancestor and his grantors by the administrators of the estate of Valle, pursuant to a sale of the land under an order of the proper court. In a former litigation these conveyances had been adjudged to be null and void, by the supreme court of Missouri. In their answer the defendants alleged, as an equitable defense and counter-claim, that their ancestor and his grantors purchased the lands in good faith, and paid therefor $50,000, which moneys the administrators applied to the payment and satisfaction of a mortgage upon said lands, and perhaps other lands of which *Valle* died seized.

The defendants claimed that, notwithstanding the apparent

and technical payment and extinguishment of such mortgage, equity would, under the circumstances, treat it as still subsisting and unsatisfied, for the protection of the purchasers from the administrators, or their grantees, and would subrogate such purchasers or grantees to all of the rights of the mortgagee, treating them as assignees and purchasers of the mortgage for a valuable consideration by them paid. They also claimed that they were in fact and in equity in possession of the land in controversy as assignees of said mortgage, and fully entitled to set up the same against any person attacking their right of possession thereto.

The court below rejected these views of the case, and struck out from the answer such equitable defense and counter-claim; but the supreme court reversed the judgment below for that reason, and in a very able opinion by Judge NAPTON, a majority of the court fully sustain the theory of the defendants that they were entitled to the equitable protection of the court as mortgagees in possession under an unpaid mortgage, and that their possession could not be disturbed until an account should be taken, and the sum ascertained to be equitably due to them on the mortgage fully paid.

In that case Judge SCOTT delivered a dissenting opinion, wherein he claims that the views of the majority of the court are unsustained by the cases; that the decision creates a new equity, or rather injects a new principle into the equity jurisprudence of the country; and, further, that the defendant's ancestor and his grantors, who paid their money under a void sale and conveyance, were mere volunteers; and, because a man may not pay the debt of another without his authority and claim it of him, the learned judge concludes that the defendants (who had succeeded to all of the rights of the original purchasers) could not be subrogated to the rights of the mortgagee, and recover of the heirs, or out of the land, the money which was thus voluntarily paid on a void conveyance.

It is believed that both these positions are untenable. That

this is no new equity—one first recognized and asserted in that case—is abundantly shown by a reference to the cases cited in the majority opinion.    Some of these cases will be hereinafter mentioned.    Again, the lands having been purchased of the administrator in good faith, and at a sale which had been ordered to be made by the proper court, and the purchasers having paid a valuable consideration for the land, in the belief that they were obtaining a good title thereto, it cannot be said, in any reasonable or just sense, that they were mere volunteers.    On the contrary, they paid their money at the request and by the procurement of the administrators; and, inasmuch as the administrators were charged by law with the duty of converting the assets and paying the debt, it may well be held that they were the representatives of the heirs to the extent that the latter should be held bound by such request, and should not be heard to allege that the purchasers, whose money went to pay the incumbrance upon the land, were mere volunteers.

The judge also speaks of the distinction between trusts and powers, and says that because the administrators have nothing but a mere power, without an interest, the land cannot be affected by their conveyance thereof unless the power is executed pursuant to the terms of the statute by which it is conferred.    In this the learned judge is doubtless correct, as he would have been had he said further, that where, as in that case, a power is created by law, equity will not relieve against a defective execution of it.    But the result of these principles is not that a purchaser in good faith at an administrator's sale is not entitled, in a case where the conveyance to him has been adjudged void, to be repaid by the heir, or out of the land, the money paid by him for such void conveyance and applied in payment and satisfaction of incumbrances upon the estate; but, only that the power having been defectively executed, the conveyance is void, and a court of equity has no jurisdiction or authority to heal the defect and make it valid.

The foregoing case was decided mainly upon the authority

of the case of *Bright v. Boyd*, 1 Story, 478, and 2 id., 605. This is perhaps *the* leading case on the question under consideration. *Boyd*, the defendant, had recovered judgment in an action of ejectment for certain premises in the possession of *Bright*, the complainant, whereupon *Bright* filed his bill in equity against *Boyd*, alleging that he was in possession of the premises in controversy, by intermediate conveyances from the administrator, with the will annexed, of the estate of John P. Boyd, the father of defendant, but that the title under the administrator's deed had failed, or rather that the same conveyed no title by reason of the failure of the administrator to comply with certain requirements of the law, which were held to be essential to the validity of the sale; and that the complainant, or those under whom he claimed, in good faith and believing that the deed from the administrator conveyed a good title to the premises, had made valuable and permanent improvements thereon. The object of the bill was to make the value of such improvements a charge upon, and to enforce payment therefor out of the premises which the defendant had recovered in the ejectment suit. The defendant *Boyd* made title to the land as devised under the will of his father.

On proof of these allegations, Mr. Justice STORY, before whom the cause was heard, after great deliberation and research, gave the complainant the relief prayed in the bill, and, in the absence of any statutory provision on the subject, held the broad doctrine, that "A *bona fide* purchaser for a valuable consideration, without notice of any defect in his title, who makes improvements and meliorations upon the estate, has a lien or charge thereupon for the increased value which is thereby given to the estate beyond its value without them, and a court of equity will enforce the lien or charge against the true owner, who recovers the estate in a suit at law against the purchaser."

The principle there asserted is precisely the same as that involved in the question under consideration in this case. In both cases, if the land is held chargeable, it is because the money

of the purchaser under the void sale has been paid in good faith, and expended to increase the value of the estate. It is quite immaterial whether this was done by paying off incumbrances, or by making permanent and valuable improvements. In either case the value of the inheritance is increased by the expenditure, and, as already observed, the plainest principles of justice demand that the heir or devisee should repay the money thus innocently expended for his benefit, to the extent that he has been benefited thereby.

The opinion of Judge STORY in *Bright v. Boyd*, is exceedingly learned and able, and will well repay careful perusal and study. He traces the principle which he applied there to the Roman law, and shows that it has been adopted into the laws of all modern nations which derive their jurisprudence from the Roman law, and demonstrates, by references to the writings of Cujacius, Pothier, Grotius, Bell, Puffendorf, Rutherforth and others, and by arguments which seem conclusive of the question, that "such principle has the highest and most persuasive equity, as well as common sense and common justice, for its foundation." We are not aware that the authority of that case has ever been shaken, or its correctness ever successfully assailed.

Before dismissing the case of *Bright v. Boyd* from our consideration, I may be permitted to transcribe a passage from the opinion, to show how identical in principle that case is with the present one, and also to show the views of the eminent jurist who wrote the opinion, upon the precise question involved in this case. Judge STORY there says that, " it cannot be overlooked that the lands of the testator, now in controversy, were sold for the payment of his just debts, under the authority of law, although the authority was not regularly executed by the administrator in his mode of sale, by a noncompliance with one of the prerequisties. It was not, therefore, in a just sense, a tortious sale; and the proceeds thereof, paid by the purchaser, has gone to discharge the debts of the tes-

tator, and so far the lands in the hands of the defendant (Boyd) have been relieved from a charge to which they were liable by law.   So that he is now enjoying the lands free from a charge, which, in conscience and equity, he and he only, and not the purchaser, ought to bear.   To the extent of the charge from which he has thus been relieved by the purchaser, it seems to me that plaintiff, claiming under the purchaser, is entitled to re-imbursement, in order to avoid circuity of action, to get back the money from the administrator, and thus subject the lands to a new sale, or at least, in his favor, in equity to the old charge.   I confess myself to be unwilling to resort to such a circuity, in order to do justice, where, upon the principles of equity, the merits of the case can be reached by affecting the lands directly with a charge to which they are, *ex aquo et bono*, in the hands of the present defendant, clearly liable."   1 Story, 498.

After what has been already said concerning the rule of the civil law on this subject, we should expect to find the courts of Louisiana asserting and enforcing that rule.   Accordingly, we find in *Dufour v. Camfranc*, 41 Martin, 607 (2 Cond. La. Reports, 243), the following language:   "It has been proved that the proceeds arising from the sale of the slaves were applied to the discharge of the judgment debts of the plaintiff, and the court is of opinion that he cannot recover in the suit until he repay that money.   *   *   *   Nothing could be more unjust than to permit a debtor to recover back his property, because the sale was irregular, and yet allow him to profit by that irregular sale to pay his debts."   It will be readily inferred from the foregoing extracts, that the action was brought to recover certain slaves which the defendant had purchased at a sheriff's sale upon an execution, which sale, it was afterwards held, was void and transferred no title to the slaves to the purchaser, but the proceeds of the sale went to pay judgment debts against the plaintiff.

The same principle is held in the cases of *McLaughlin's Admin-*

istrators v. Daniel, 8 Dana (Ky.), 182; Howard v. North, 5 Texas, 290; Bently v. Long, 1 Strob. Eq. R., 43.

The first of these cases is to the effect, that the purchaser of property sold under execution, where the property is recovered from him or his vendee by virtue of superior title, has a right, in equity, to be substituted for the creditor, and to have the amount of the purchase money refunded to him by the defendant in the execution; or where the execution is against administrators, out of the assets of the intestate. Howard v. North decides, that "where an execution sale under a valid judgment is void, and the debtor brings suit to recover the property, if there be no fraud on the part of the purchaser, the latter will not be compelled to restore the property without being re-imbursed the amount which he paid, and which went to discharge the judgment." Bently v. Long, supra, is similar to Howard v. North.

There are numerous other cases which, although perhaps not so directly in point as those above cited, recognize the same principle and apply it to a greater or less extent. Among these are the following: Fleming v. Beaver, 2 Rawle, 128; Foster v. Fox, 4 Watts and Serg., 92; McPherson v. Cunliff, 11 Serg. and Rawle, 422; Cottrell's Appeal, 23 Pa. St., 294; Kelchner v. Forney, 29 id., 47; McCormick s Adm'rs v. Irwin, 35 id., 111; Mosier's Appeal, 56 id., 76; Blight's Heirs v. Tobin, 7 Monroe, 612; Skiff v. Cross, 21 Iowa, 459; Selleck v. Phelps, 11 Wis., 380; Matterson v. Thomas, 41 Ill., 110; Peltzer v. Clark, 5 Peters, 481; Jayne v. Boisgerard, 39 Miss., 796; Capehart v. Mhoon, 5 Jones Eq., 178; Denny v. Mattoon, 2 Allen, 361, (384).

In our investigation of the questions under consideration, we have not overlooked the case of Wilkinson v. Filby, 24 Wis., 441. That was also an action in the nature of ejectment, to recover certain lands which the plaintiffs inherited from their father. The defendant claimed title to the land under a sale and conveyance thereof by the guardian of the plaintiffs. Such sale and conveyance was held void by reason of certain omis-

sions and defects in the proceedings preliminary thereto. The defendant offered to show that the purchase money, paid for the land to the guardian, was expended by him for the benefit of the plaintiffs. The offered testimony was rejected by the circuit court. On the argument in this court, it was claimed that, if such purchase money was used for their benefit, the plaintiffs were estopped to deny the validity of such sale and conveyance. This court held, and in my opinion held correctly, that such fact would not, of itself, constitute an estoppel upon the plaintiffs. The principle to be gathered from the cases on the subject seems to be that some act of the ward after he reaches majority, such as receiving the purchase money or a portion of it, or the like, is essential to create an estoppel against him. This is the extent of the decision of this court in that case. No question was raised, considered or decided, as to the right of a purchaser in good faith at a guardian's sale, which is void by reason of omissions or defects in the preliminary proceedings, to have the purchase money, paid to the guardian and used by him for the benefit of the ward, adjudged an equitable charge on the land, to be paid before the purchaser shall be dispossessed thereof. Had this question been made, we cannot say how it would have been decided. It is sufficient to say that it was not decided in that case, and that we do not intend to decide it in the present case. It must still be regarded as an open question.

A single additional suggestion, and we leave this branch of the case. It is the policy of this state, evident from its legislation during a series of years, to uphold, to a reasonable extent, judicial sales fairly and honestly made, although the proceedings preliminary thereto, or the record thereof, may be to some extent defective or irregular. The law of 1861, chap. 127, before mentioned, is an illustration of the truth of this observation. That this is wise policy cannot, it is believed, be successfully controverted. It is beneficial to the purchaser, in that, when he parts with his money, it gives him an additional guaranty that he is obtaining a good title to the property for

which he pays; and it is equally beneficial to all persons interested in the property, whether as heirs, devisees, creditors or debtors, because such guaranty to the purchaser, is an element of value, and naturally increases the price for which the property may be sold, and all such persons have a direct interest that the largest price should be obtained. The same policy will be carried out, and the same beneficial results realized by all parties interested, by holding the land chargeable for the purchase money, paid in good faith and applied to the discharge of incumbrances upon it, when the title of the purchaser thereto fails, by reason of irregular or defective proceedings preliminary to the sale.

We hold, therefore, that the whole purchase money paid by the defendant for the land in controversy, and the interest thereon, less the mesne profits of the land (exclusive of the improvements placed thereon by him), during his occupancy thereof, to the 22d day of May, 1862, is a lien and charge upon the land; and that the plaintiffs cannot have restitution of the land claimed by them, until the amount of such lien and charge is paid.

The answer, as before stated, only sets up an equitable defense to the extent of the sum paid to discharge the Boyd mortgage; but as we have all the facts before us, we think it a proper case to permit the defendant to amend his answer by showing how the whole purchase money paid by him was applied, and also to make a counter-claim in respect to the whole thereof, if he shall be so advised.

The account should be stated as follows: The plaintiffs should be charged with one-half of the sum paid by the defendant for the land, and which was applied in payment of debts and charges against the estate of Pearly P. Blodgett, and simple interest thereon, at seven per cent. per annum, from the date of such payment to the time of stating the account. The plaintiffs should be credited with the value of the use of the undivided half of the quarter section, exclusive of the widow's

dower right (being the interest claimed by them), during the time the same was occupied by the defendant, but not later than May 22, 1862. In estimating the same, the value of the use of the improvements made by the defendant must not be allowed to the plaintiff. Such values are to be ascertained on the principles laid down for assessing the plaintiffs' damages for mesne profits, which accrued during the six years immediately preceding the commencement of the action. If the annual value of the use of the land, allowed the plaintiffs, does not exceed the annual interest on the original sum so made a charge upon the land, no interest should be allowed on such value. For it is obvious that if such value equals the interest so charged to the plaintiffs, then at the end of the accounting, the rent, without allowing any interest thereon, would just pay the interest allowed on the original purchase money, which is equitable. But, if the annual value of such use, allowed the plaintiffs, *exceeds* the annual interest charged to them, they should be allowed simple interest on such excess, at seven per cent., to the date of accounting. The court will have no difficulty, when the account is stated, in making an adjustment of the interest on balances, which will be equitable between the parties.

If the defendant amends his answer and demands the proper relief, and any sum is found due him on account of the purchase money paid by him for the land and the interest thereon, we are of the opinion that our "betterment law" (R. S., ch. 141, sec. 32), indicates the relief to which he is entitled. That is to say, the plaintiffs shall not have execution until such sum so found due the defendant is paid; and, if the same with the interest thereon remain unpaid for three years after the amount shall be ascertained, the plaintiffs shall be forever barred from a recovery of the land.

The defendant will also, upon proper claim, be entitled to recover for permanent improvements, and for the taxes paid by him upon the land, to be ascertained pursuant to the provisions of said chap. 141, in that behalf.

The plaintiffs, being allowed for use and occupation of the land in the accounting relative to the purchase money, cannot be allowed therefor in the accounting concerning taxes and improvements.

When the damages for use and occupation since May 22d, 1862, shall have been assessed, and when the accounts relative to the purchase money, use and occupation, taxes and improvements, shall have been stated, the circuit court doubtless has power to determine therefrom and adjudge what sum in the aggregate (if any) must be paid by the plaintiffs to the defendant to entitle them to execution and to the possession of the land claimed and recovered by them in this action.

The judgment of the circuit court must be reversed, and the cause remanded for a new trial, and for further proceedings in accordance with this opinion.

*By the Court.*—So ordered.