NicholsoN, C. J.,
delivered the opinion of the Court..
This is a proceeding by mandamus to compel the Mobile & Ohio Railroad Company to receive, in payment for freight or passage on the road, certain tax receipts given by the tax collector of -Madison county, Tennessee, and countersigned by the County Court Clerk of said county.
The petition was filed on the 2nd of January, 1869, and exhibits three tax receipts, amounting in all to about $24, none of which were issued to petitioner, nor assigned to him by endorsement. He alleges that he is the holder of the receipts by delivery, and that he tendered the same in payment for a ticket from Jackson to Mobile, but that the agent of the railroad company refused to receive them in payment for said ticket.
*152 An alternative mandamus issued, requiring the company to appear and show cause why the alternative mandamus should not be made absolute. The company appeared and moved to quash the writ, and assigned various reasons why the motion should be sustained. The Circuit Judge determined that the reasons were insufficient,, and overruled the motion; and thereupon gave judgment, making the mandamus absolute. From this judgment the company appealed in error to this Court.
"We deem it unnecessary to notice, in detail, the several objections taken to the petition, for want of sufficient certainty and definiteness in its several allegations, as these objections are merely technical, not reaching the merits of the case, and as the petition, if insufficient as to the matter of mere form, is amendable. But we are satisfied that there is no substantial defect in the averments of the petition, and will proceed to examine the objections which reach the merits of the case.
1. It is said that to entitle the petitioner to the benefit of the writ of mandamus, he must show that he has a clear legal and equitable right to something which is properly the subject of the writ; but that petitioner shows, by the exhibits to his petition, that the tax receipts have never been assigned to him in writing, and, therefore, that he has not the legal title. It is true that the tax receipts exhibited were not issued to the petitioner, nor do they appear to have been assigned to him by written endorsements from the original party to whom they were issued. Whether he has- *153 the legal title, therefore, must depend upon the proper construction of the law which authorized their issuance.
The receipts were issued in pursuance of the 8th section of the act of 1852, p. 161, entitled “An act to authorize and regulate county subscriptions for railroad stock.” After providing the mode by which counties could subscribe for stock, and for the manner of holding elections by the people of the counties to determine whether the stock should be subscribed, and defining the mode of levying taxes to meet the subscription, and of collecting the same, the act in sec. 8 contains this provision: “ As the said railroad collector shall receive the tax, he shall give the person paying, a certificate showing the amount, which certificate may be traded, assigned or transferred, and shall be received in payment of either freight or passage on any road on which such subscription may have been expended.”
It is argued, that in providing that the certificates might be “traded, transferred or assigned,” the Legislature intended to make them negotiable by written endorsement only. We are aware of no rule of interpretation which requires such construction to be placed on the words; neither in their technical nor in their ordinary use do they necessarily imply that the act to be accomplished is to be evidenced by writing. Bur-rill on Assignments, p. 3 (note), says, “the term assignment is frequently used in the books to express the transfer of a promissory note by delivery.” He gives a number of cases to illustrate the remark. But if Are look to the object of the Legislature for making *154 tbe receipts negotiable, we can not doubt that it was intended to make them easily transferable, by way of being used as a kind of local currency This object would be best accomplished by authorizing their transfer or assignment, either by mere delivery or by writing; and such, we think, is the proper import of the words in the connection in which they are used. This objection, therefore, is not well taken.
2. It is next said that the Mobile & Ohio Railroad Company was organized in 1848, that the act authorizing the county subscriptions was passed in 1852, and that the earliest date of the three certificates exhibited in the petition is 1854, and it is argued that it is not shown when, how, or where said company became a party to the Madison county subscription, or became liable to pay said tax certificates. And it is added that the general internal improvement law, passed January 22, 1852, contains this provision: “That no company shall be required, under the provisions of this act, to do anything inconsistent with the provisions of its charter, or in violation of existing laws.”
By reference to the petition we find this averment: “That said railroad tax was collected and paid over to said railroad company, and tax certificates given to the tax payers in due form of law for the amount of railroad tax paid by each tax payer; and he is' advised and charges, said Mobile & Ohio Railroad Company, having applied for and accepted said subscription, took upon itself the statutory obligations to receive said tax certificates in payment' for *155 freight and passage.” The motion to quash admits the truth of these allegations. If the railroad company applied for the subscription of $250,000 in accordance with the statute, and actually received and appropriated the money so applied for and raised, they consented thereby to the terms on which the tax was collected and paid over, and the company is now es-topped from denying the statutory obligations imposed upon them. This would be so even if the original charter of the company contained no provision authorizing them to receive county subscriptions of stock. The subsequent act of the Legislature in 1852, authorizing the subscriptions by counties, passed on the 22d of January, 1852, having been accepted by the company to the extent of receiving subscriptions for stock by Madison county, they thereby, to that extent, adopted that act as part of their charter, and, of consequence, were guilty of no violation of their charter in accepting said subscription, and are effectually es-topped from now repudiating their obligations so assumed. This objection, therefore, is not well taken.
3. It is next said that the writ of mandamus is not a writ of right, and is not granted as a matter of course — that it only lies where the law has established no specific remedy, nor where satisfaction equivalent to a specific remedy can be had. Hence it is inferred that, as the petitioner might have had his action on the case for damages, therefore he can not have the writ of mandamus. This argument assumes that the action on the case furnishes an equivalent satisfaction to a specific execution of the obliga *156 tion — that is, assuming tbe very question at issue. Tbe petitioner has a right, as he alleges, to buy a railroad ticket to Mobile, and to pay for it with his tax receipt. The company say, true, we are bound to receive your tax receipt for a ticket, but we chose to require you to pay the money, and you can sue us for damages for violating our contract; when you get your money, that will be equivalent to your tax receipt, and you can then buy a ticket to Mobile. It is far from being clear that the remedy by action for damages would be equivalent to a specific execution of the obligation. It might be that a judgment against the company would not be readily convertible into money.
It is a general rule that whenever a statute gives power to, or imposes an obligation on, a particular person to do some act or duty, and provides no specific remedy on non-performance, a mandamus will be granted: Tapping on Manda., 80; Winters v. Burford, 6 Cold., 330.
Moses on Mandamus, p. 14, lays down this as the rule: “It will, therefore, be observed that it is one of the remedies resorted to when a person desires to be placed in possession of a right illegally- and unjustly withheld from him. It does not award damages as a compensation for an injury, but it seeks to give the thing itself — the withholding of which constitutes the injury complained of.” And he adds: “The office of the writ of mandamus is very extensive. It has been said that it is the supplementary remedy when all others fail.”
*157 Again, at page 18, he says: “That although the power to issue the writ in America is not regarded as a prerogative power, yet it so far partakes of the nature of a prerogative writ, that the Court has the power to issue or withhold it, according to its discretion. But this discretion is not an arbitrary one; it is a judicial discretion, and when there is a right, and the law has established no specific remedy, this writ should not be denied:” 7 Cush. Rep., 226; Angel & Ames Corp., ss. 699-710. Redfield on R. "W., 2 vol., p. 279, says: "No better rule can he laid down, than that where the charter of a corporation, or the general statute in force, and applicable to the subject, imposes a specific duty, either in terms, or by fair and reasonable construction, and implication, and there is no other specific or adequate remedy, the writ of mandamus will be awarded.”
We deem it useless to cite other. authorities to the effect, that whenever there is a right which has been illegally and unjustly withheld, and there is no other specific adequate remedy, the writ will be issued, and private persons as well' as the public, are entitled to its benefits: Winters v. Burford, 6 Col., 328; Angel & Ames Corp., ss. 704-707.
In the case before us, the legal right is clear, the obligation created by the general statute, and the acceptance of its provisions and benefits by the company, is obvious, and the withholding of the right is illegal and unjust. It is equally obvious that there is no specific adequate remedy provided by the law which created the right and the obligation.
*158 It appears by reference to tbe act of 1852, that its leading object was to give assistance to the railroads then straggling -into exisenee, by authorizing the people of counties to subscribe for stock, and to pay the same by imposing taxes on themselves. This assistance was sought for and accepted by the companies, not so much to swell the number of their subscribers for stock, as to procure the material aid to be furnished by taxation. To secure this object, the Mobile and Ohio Kailroad Company not only agreed that the counties so furnishing aid should be represented in the company, but that every individual who should buy up $100 of the tax receipts should become a stockholder, and in addition to this, that every holder of the tax receipts, who preferred to invest his tax receipts in freight or passage on the road, should have the right to do so. The acceptance of the assistance from the county of Madison imposed all of these obligations on the united corporation represented by its officers. Each of these obligations is equally binding on the corporation, and after having accepted the taxes, and used them for the common benefit in building the road, they can not now repudiate any one of the obligations thus assumed.
4. It is next objected, that the writ in this case is sued out, not so much to have the right of petitioner enforced, as to the three tax receipts exhibited in his petition, as to test the question, with the view of '"’having a decision that will be applicable to many other like receipts. We are unable to appreciate the force of this objection. As far as we are able to see, the *159 petitioner has sued out the writ in good faith to have his rights determined in the specific case presented. It can surely be no reason for our withholding from him his rights, that he or others may have other similar rights that may be settled by this adjudication. It is our duty to determine causes brought regularly before us, according to law, and to leave the consequences of our decision on other cases to have their legitimate weight.
5. It is next objected, that the right now sought to be enforced has been so long deferred that it has become stale, and, therefore, that it is entitled to no favor. It does appear that all of the receipts exhibited were dated in 1854, and that the petition was not filed until January, 1869, a period of fourteen years. It further appears, that the holders of the receipts were not authorized to use them in payment of freight or passage, until one year after the road was completed.. But it does not appear at what time the road was completed. The facts, therefore, do not authorize us to assume, that the assertion of his right by petitioner has been unreasonably delayed, nor do we well see how the railroad company can complain of the delay. The petitioner has held a' bona fide debt against the company for fourteen years, bearing no interest, and .now, after having waited that length of time, and lost his interest all the time, and although the company has had the use of his money without interest, he is sought to be repelled upon the ground, that he has been so indulgent to his debtor, that his elaim has become stale. We are unable to appreciate the force of this objection.
*160 It results that we find no error in the action of the Circuit Judge in refusing to quash the writ and petition, and we affirm his judgment for a peremptory mandamus.