## COOS BAY RAILROAD COMPANY *v.* WIEDER.

[S. C. 38 Pac. Rep. 338.]

1. Claim to Attached Property by Third Person — Effect of Redelivery or Replevin Bonds on Subsequent Liens — Sheriffs — Code, §§ 135, 154. —Where property has been seized by an officer under a writ of attachment or execution, and afterwards taken from him under a redelivery bond, as provided in section 154, Hill's Code, or under a replevin bond, as provided in section 135, the property is not discharged from the lien, but still remains *in custodia legis*, (*Kohn* v. *Hinshaw*, 17 Or. 308, cited and approved,) and may not be seized under another writ against the same defendant.

2. Mandamus — Replevin — Action for Damages — Adequate Remedy at Law — Sheriffs.—Where a sheriff, from whose possession property seized under attachment has been taken by a claimant under a replevin bond given under section 135 of Hill's Code, seizes the property under a second attachment against the same defendant before plaintiff's right to possession is determined, mandamus lies to compel a return of possession to such claimant. In such case neither an additional action of replevin nor an action against the sheriff for neglect of duty is an adequate remedy at law.

Appeal from Coos: J. C. Fullerton, Judge.

This is a mandamus proceeding by Patrick Flanagan, T. S. Minot, J. D. Garfield, and the Coos Bay, Roseburg and Eastern Railroad and Navigation Company against R. M. Wieder, who was, at the time of the filing of the petition for the writ, sheriff of Coos County, Oregon, and was the immediate successor to Z. T. Siglin. On the twelfth day of May, eighteen hundred and ninety-two, the said Siglin, as sheriff, had for service an execution duly issued out of the Circuit Court for Coos County in a case wherein C. F. Miller was plaintiff and one R. A. Graham was defendant, by virtue whereof he levied upon nine hundred and twenty-four steel T-rails as the property of Graham. On the eighteenth of the next month, the Coos Bay, Roseburg, and Eastern Railroad and Navigation Company, one of the plaintiffs in this proceeding, commenced an action in the Circuit Court for Coos County to recover possession thereof, and thereupon gave the undertaking provided by the statute, with Patrick Flanagan, T. S. Minot, and J. D. Garfield, the other plaintiffs, as sureties, and claimed the immediate possession of said property; whereupon the coroner of the county took it from Siglin, and, after waiting three days for defendant to reclaim its possession, delivered the same to the railroad company. This action has never been finally determined. On the thirty-first day of October, eighteen hundred and ninety-two, the defendant R. M. Wieder, as sheriff, had for service a writ of attachment duly issued out of said court, in a cause therein pending wherein Dolbeer and Carson were plaintiffs, and the said R. A. Graham was defendant, by virtue of which he attached a portion of the same property as the property of Graham, and took the same into his possession. On the third day of December, eighteen hundred and ninety-two, the railroad company commenced an action against Wieder to recover two hundred and ninety-five of these rails. No undertaking

was executed, and immediate delivery of the property was not claimed.   This action also is still pending.

The mandamus proceeding now here was instituted to compel a return to plaintiffs of the nine hundred and twenty-four steel T-rails.   The defendant in his return to the writ denies that said rails were taken from the possession of said railroad company, or that it was the owner or entitled to the possession thereof, or that he had possession of them or any of them, except the two hundred and ninety-five rails aforesaid, and sets up two further and separate defenses.   The first is, in effect, that defendant seized under said writ of attachment only four hundred of the rails in dispute, that a portion of these had been taken from him, and that at the time of filing said return he had only two hundred and ninety-five in his possession.   There is some showing made in this defense concerning other property which Graham took from the sheriff upon a forthcoming bond, which is not involved in the dispute as to the rails.   The second defense is that the action now pending for the recovery of the said two hundred and ninety-five rails is a bar to this proceeding.   The plaintiffs moved to strike out these further and separate defenses, and also a denial and some affirmative matter in the answer to the writ of mandamus touching the question as to whether the property was taken by defendant from plaintiffs, which motion was allowed by the court.   The defendant refusing to plead further, plaintiffs moved the court that the writ be made peremptory as to the two hundred and ninety-five rails admitted in defendant's answer to be in his possession, and that he be required by said writ to deliver the same to plaintiffs.   This motion was also allowed, and the writ by order of the court made peremptory.   To reverse the judgment of the court in these respects this appeal is prosecuted.          Affirmed.

For appellant there was a brief and an oral argument by *Mr. S. H. Hazard.*

For respondent there was a brief by *Messrs. John A. Gray,* and *J. W. Hamilton,* and an oral argument by *Mr. Hamilton.*

Opinion by Mr. Justice Wolverton.

1.    There are two methods provided by law by which a third person claiming personal property can obtain possession of the same from an officer holding it under a writ of attachment.   One is by executing a written undertaking, engaging thereby to redeliver the property, or pay the value thereof to the sheriff, as provided in section 154, Hill's Code, and the other by an action of replevin, known under the statute as "an action for the recovery of personal property."   Personal property held under an execution may also be replevied from the officer by a third person claiming the same.   Provision is also made (Hill's Code, §§ 286, 287,) by which the sheriff may summon a jury and try the rights of property, when notified in writing of the claim of a third person thereto,* but these sections appear to be for the protection of the sheriff, and do not preclude such person from maintaining an action at law for the recovery of the possession of such property, or for damages for taking the same, against any person other than the sheriff: *Hexter* v. *Schneider,* 14 Or. 187, 12 Pac. 668.   If the verdict of the sheriff's jury be for the claimant, the plaintiff in the writ may, nevertheless, under the provisions of section 289, by tendering the sheriff a written undertaking, require him to sell the property notwithstanding such verdict; so that the claimant is not afforded by such proceeding any ample or complete remedy for the recovery of the

* See an extended discussion of this matter in *Vulcan Iron Works* v. *Edwards,* 27 Or.—, 36 Pac. 22, 39 Pac 403.— Reporter.

possession of his property.   By the levy of an execution, or the seizure of specific personal property by virtue of a writ of attachment, such property is said to be placed *in custodia legis*, and the officer thereby acquires a special property therein.   Subsequent and successive writs, whether of execution or attachment, coming into the hands of the same officer, become liens upon such property perforce of that fact, without the necessity of additional or other levy or seizure thereof: 1 Freeman on Executions (2d ed.), § 135; *Crosson* v. *Stout*, 17 Johns. 116, 8 Am. Dec. 373; Drake on Attachments (7th ed.), § 269. Property taken from the officer through the instrumentality of a redelivery bond, as provided for in section 154, is not thereby taken out of the custody of the law, nor is the lien of the attachment discharged, (*Kohn* v. *Hinshaw*, 17 Or. 308, 20 Pac. 629; *Glass* v. *Williams*, 46 Ind. 253; *Hagan* v. *Lucas*, 10 Pet. 399,) and it would seem that where property is replevied by a third party from the officer holding it under a writ of attachment or execution, and an undertaking is given for its return, or the value thereof if return be awarded, the lien of the officer under his writ is not discharged, and the property is still *in custodia legis*: *Hunt* v. *Robinson*, 11 Cal. 262; *McKinney* v. *Purcell*, 28 Kan. 446; *Sellock* v. *Phelps*, 11 Wis. 380; *Bates County National Bank* v. *Owens*, 79 Mo. 429; *Pipher* v. *Fordyce*, 88 Ind. 437.   Under the statute (Hill's Code, §§ 135, 136, 137, 138, and 141,) very careful and ample provisions are made for hastening the trial, and securing to the prevailing party in an action of replevin the identical subject matter in dispute, or its just equivalent.   The plaintiff in such action, if he seeks immediate possession of the property, is required to execute a written undertaking, with two or more sufficient sureties, approved by the sheriff, in double the value of the property, for the prosecution

of the action, for a return of the property to the defendant, if return thereof be adjudged, and for the payment to him of such sum as may for any cause be recovered against the plaintiff. A copy of the undertaking is required to be served upon the defendant, who may except to the sufficiency of the sureties, and require them to justify in like manner as upon bail on arrest, (Code, §§ 135, 136,) or he may, by the execution of a like written undertaking, with two or more sufficient sureties, to be approved by the sheriff, conditioned for the delivery of such property to plaintiff, if return thereof be adjudged, and for the payment to him of such sum as may for any cause be recovered against the defendant, require the officer to return the property to him: Code, § 137. If he do neither within three days, the officer is required to deliver the property to the plaintiff: Code, § 137. Provision is also made (Hill's Code, §§ 214, 262,) for a verdict and judgment for the return of the property, or in case the property cannot be had, then for its value, and damages for detention. The undertaking of the party securing the possession stands for the property. The rem is thereby placed within the custody of the law, to abide the determination of the court concerning it.

Keeping these observations in mind, let us consider their application to some of the controlling features in this case. When the railroad company gave its undertaking in its action against Siglin, the sheriff, he could have executed the statutory undertaking and retained the property. In that event his holding would have been by virtue of the undertaking, but the lien of the execution issued at the instance of Miller against Graham's property created by the levy thereunder would still remain: that is to say, the lien would not be displaced by the undertaking, nor the property relieved of the effect of the levy; and, should the defendant prevail in such action, the undertak-

ing would thereby be discharged, and as sheriff he could then subject the property to the satisfaction of the execution. It is apparent that other and subsequent executions or writs of attachment coming into the hands of the officer while holding the property by virtue of his undertaking would, perforce of that fact, become liens thereon without any additional seizure or levy. So that the duties of the officer in the instance supposed would be perfectly clear: *First*, he must hold the property to answer the call of the undertaking, should the result of the action be adverse to his contention; *second*, should he succeed, he must apply the property to the Miller execution; and, *third*, the residue to the satisfaction of subsequent writs, in the order in which they came into his hands. But the plaintiff in the action of the railroad company against Siglin executed the undertaking and obtained the possession of the property. This, as we have seen, did not discharge the lien of Miller's execution. It did, however, dispossess the officer, and left him without the actual custody of the property. Should he prevail in the action he would be entitled to a return of the property, which he could then subject to the demands of the execution and subsequent writs in the order of their preferment. The undertaking standing for the property, *quære*, would not subsequent executions and writs of attachment coming into the hands of the officer become liens upon the property perforce of that fact without the necessity of an actual seizure ? We are inclined to the opinion that they would. But be that as it may, most of if not all the authorities last above cited, to which may be added Drake on Attachment, § 331, sustain the doctrine that after property is thus bonded, it cannot be seized under subsequent writs against the debtor, or against a third person claiming it adversely to the debtor and the creditor; so that it would be legally impracticable for Wieder, who succeeded Siglin as sheriff of Coos County, to seize the

same property, or any part of it, under the writ of attach-
ment issued in the Dolbeer and Carson case against Graham.
At the time Wieder attempted the seizure under said at-
tachment, he was, to all intents and purposes, defendant
in the action commenced against Siglin, and was bound to
know that the railroad company had given an undertaking
and replevied the property in question; in other words,
that such property was in the custody of the law, and not
liable to seizure under said attachment. The plaintiff is
bound by its undertaking for a return of the property
should judgment go against it in the action for its re-
covery. If, under such circumstances, the officer could
take the same property and dispose of it under a subse-
quent writ, he would be possessed of a very unusual and
extraordinary power indeed. He could take from plaintiff
the very thing which it (the railroad company) is bound
to redeliver to him, and thereby put it beyond the power
of the company to comply with its undertaking otherwise
than by paying the value of the property. If carried to
its logical results, such a doctrine would work an intoler-
able hardship upon the plaintiff. It could be required by
legal process, in the first place, to surrender up the thing
it is bound to restore; and in the second place, if unsuc-
cessful in the action, it would be bound to pay its value,
and, even if successful, it would be driven to an action
against the officer for a wrongful seizure,—the very thing
it has endeavored to provide against through the instru-
mentality of the undertaking. The law knows no such
doctrine: it is satisfied when a debtor's property is once
subjected to the payment of his debts, and this is all the
creditors can ask in justice and good conscience. If this
property in reality belonged to Graham, the law will be
satisfied when that fact is determined in the action pend-
ing, and the property is redelivered by the railroad com-
pany to the sheriff, to be applied upon the execution and

other writs that may have subsequently come into his hands against the property of Graham.   This is all that could have been obtained from Graham in the first instance, and all that can be required of the company,— or in lieu of the property, its value,— under the conditions of its undertaking.   We conclude, therefore, that while the action commenced by the railroad company against Siglin is pending, and the company is bound by its undertaking for a redelivery of the property, Wieder could not, by virtue of the writ of attachment issued in the Dolbeer and Carson case, lawfully seize upon and take actual possession of said property, or any part thereof.

2.   We come now to a question more difficult of solution, and which we have solved not altogether to our satisfaction, but, as we believe, in accord with the law applicable to the facts as developed by this proceeding. Wieder, the defendant herein, and now also the real defendant in the action of the railroad company against Siglin, has, by virtue of the writ of attachment issued in the Dolbeer and Carson case, seized upon and taken actual possession of two hundred and ninety-five steel T-rails, as admitted by the pleadings, being a portion of the nine hundred and twenty-four steel T-rails replevied by the company in its action against Siglin.   The plaintiffs herein, being the company which gave the undertaking, and Patrick Flanagan, T. S. Minot, and J. D. Garfield its sureties, have instituted this proceeding to compel Wieder as sheriff to return these two hundred and ninety-five rails to plaintiffs, so that they may have them to answer the call of their undertaking.   Can the proceeding be maintained?   If the plaintiffs have no other plain, speedy, and adequate remedy in the ordinary course of law it can, otherwise not.   Wieder having, as sheriff, taken this property into his custody contrary to law, when the plaintiffs were, under the provisions of their under-

taking, entitled to such custody, it is clearly his duty as such officer to return the same to plaintiffs. The defendant's counsel has pointed out one remedy which he claims is not only speedy and adequate, but is one that one of the plaintiffs, the railroad company, has actually adopted, to wit, an action by the company against Wieder for the recovery of this identical property. He further claims that even if the remedy is not adequate, the railroad company having instituted the action, it is a bar to the mandamus proceeding. In *Rex* v. *Barker*, 3 Burrows, 1267, as early as seventeen hundred and sixty-two, in discussing mandamus Lord MANSFIELD says: "The original nature of the writ, and the end for which it was framed, direct upon what occasions it should be used. It was introduced, to prevent disorder from a failure of justice, and defect of police; therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one. Within the last century it has been liberally interposed for the benefit of the subject and advancement of justice. The value of the matter, or the degree of its importance to the public police, is not scrupulously weighed. If there be a right, and no other specific remedy, this should not be denied." In *La Grange* v. *State Treasurer*, 24 Mich. 477, CAMPBELL, J., after referring to the language of Lord MANSFIELD, says: "It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ. Where none but specific relief will do justice, specific relief should be granted, if practicable, and where a right is single and specific it usually is practicable." It is not the mere fact that an action or other proceeding will lie that will exclude the remedy by mandamus. The legal remedy must not only be specific, but it must be one competent to afford

relief upon the very subject matter of the application, and if it be doubtful whether such action or proceeding will afford an ample or complete remedy the writ should be allowed: Moses on Mandamus, 112; *State* v. *Wright*, 10 Nev. 175.   Mr. Spelling, in his work upon Extraordinary Relief, § 1375, says: "It is not merely the absence of other legal remedies, but their inadequacy, coupled with the danger of a failure of justice that would result without interference by an extraordinary remedy, which usually determines the propriety of this species of relief."   See also *Commonwealth* v. *Commissioners of Allegheny County*, 32 Pa. St. 224; *Fremont* v. *Crippen*, 10 Cal. 215, 70 Am. Dec. 711; *Babcock* v. *Goodrich*, 47 Cal. 509.

Now the railroad company had already replevied this property, and executed an undertaking for its return, if return should be awarded, and, as we have seen, was entitled to its custody until that event should happen.   The action by way of replevin against Wieder could not relieve its situation, even if it took the property from the sheriff under another undertaking executed in that section.   It would still be bound to answer the call of its first undertaking, and if replevin was the company's only remedy it might be required to replevy as many times against the same officer, and furnish as many undertakings, as Graham had creditors; and thus numerous undertakings for the prosecution of the several actions, and for the return of the same property in each, would accumulate against the company, all running to the same defendant, and all dependent upon a judicial determination of the same state of facts.   Should the company eventually be defeated, it might be required to respond to as many actions as it had executed undertakings before a final settlement could be obtained of such an admixture and entanglement of legal rights.   Should it be successful in the first action, that would not determine the others, and it might be driven to

trial in each.    Subsequent actions of replevin for the same property would therefor perplex and confuse the company's rights, rather than constitute remedies that were either speedy or adequate.    But if it be contended that the company's duties would be fulfilled when it surrendered the property under the first undertaking, and that the controversy as to subsequent undertakings would be at an end, then it would be apparent that the execution of such subsequent undertakings would be a useless thing, and the law never requires a useless thing of any person. These considerations would apply as well to the inadequacy of resorting to the forthcoming bond under section 154 by plaintiffs for relief.    Undoubtedly the action against Wieder was neither speedy nor adequate, and did not meet the exigencies of the case; but, having been instituted, does that fact constitute a bar to the mandamus?    It is difficult to see why it should.    If such a remedy was plain, speedy, and adequate, mandamus would not lie, whether the action was instituted or not.    It is the fact that the remedy exists that makes it improper to award the mandamus; not that it has been adopted in a special case; and if an inadequate remedy be actually resorted to, it can have no greater effect to bar the mandamus than if such remedy had not been invoked.

Appellants, however, contend that there is yet another remedy for plaintiffs, and that is by action against the sheriff for neglect of duty, and cite in support thereof *Habersham* v. *Sears*, 11 Or. 431, 5 Pac. 208, 50 Am. Rep. 481. In this case it appears that Sears, as sheriff, having in his hands an execution, refused to levy the same, and Habersham having brought mandamus to compel him to act, it was held that mandamus would not lie for the reason that Habersham had an adequate remedy, either against the sheriff at common law, or upon his statutory bond for such damages as he might have sustained by reason of the non-

action of the officer.   The case at bar is distinguishable from that.   The object of the execution in the case referred to was to obtain the money due upon a judgment. If the officer neglected or refused to make the money by levy of his writ, that fact formed the basis of an action by which the plaintiff could make his money out of the sheriff by direct action against him.   This, without doubt, is an adequate remedy, as what plaintiff did not obtain by virtue of his execution was obtainable by action against the sheriff.   But in the case at bar mandamus is interposed to compel the officer in person to surrender a specific thing; not its value or equivalent in money, but the thing itself, the two hundred and ninety-five steel T-rails, and the surrender of which is a duty incumbent upon him. In *Fremont* v. *Crippen*, 10 Cal. 215, 70 Am. Dec. 711, mandamus was awarded requiring the defendant as sheriff to execute a writ of restitution issued in an action for forcible entry and detainer, the court saying: "It is true, he (plaintiff) might sue defendant on his bond for the damages resulting from the nonperformance of his duty, but the possession of the property which has been adjudged to him can only be obtained by the present process, and is the only adequate remedy."   Where possession of a right illegally and unjustly withheld, and not damages for the injury done, is the object, mandamus is the property remedy to give the thing itself, the withholding of which constitutes the injury: *Mobile Railroad Company* v. *Wisdom*, 5 Heisk. 125.   An action upon an auditor's bond is not an adequate remedy, where he refuses to issue a county warrant directed to be issued by a board of supervisors, and mandamus will lie: *Babcock* v. *Goodrich*, 47 Cal. 509. So it may be deduced from these authorities that where a specific right or thing is withheld, damages are inadequate, and mandamus will lie.   As we have seen, the railroad

26 Or.—59.

company and the other plaintiffs in this proceeding, as its sureties, are entitled to the possession of this property to answer the call of their undertaking, abiding the action. An action against Wieder sounding in damages for dereliction of duty would be entirely inadequate to replace the specific property, without which there would be a breach of the undertaking. We have been pointed to no other remedy as adequate to give the relief to which plaintiffs are entitled, and none has occurred to us in the course of the examination of this case; hence we conclude that plaintiffs' motion to strike out portions of the answer, including the two further and separate defenses, was properly allowed, and the peremptory mandamus properly issued. The judgment of the court below is affirmed.

AFFIRMED.