ASHBY v. FAULKNER, Marshal.

(First Division. Juneau. December 31, 1913.)

No. 1055A.

1. MANDAMUS (§ 54*)—WRIT OF RESTITUTION.

Mandamus will lie to compel a marshal to levy a writ of restitution for the recovery of real property.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 108; Dec. Dig. § 54.*]

2. FORCIBLE ENTRY AND DETAINER (§ 41*)—UNITED STATES MARSHALS (§ 30*)—WRIT OF RESTITUTION—ENFORCEMENT.

Where the plaintiff had a writ commanding that "plaintiff have restitution of" the premises, he is entitled to have possession under it, although another person than the defendant be found in possession. The marshal may demand a bond, but, the bond having been furnished, the marshal has no discretion but to execute the writ as against everybody.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. §§ 167, 168; Dec. Dig. § 41;* United States Marshals, Dec. Dig. § 30.*]

3. UNITED STATES MARSHALS (§ 31*)—WRIT OF RESTITUTION—ENFORCEMENT.

Where a writ of restitution contains only a vague and indefinite description of the property to be restored, the marshal is not obliged to enforce it at his peril. He need not look back to the judgment or complaint for a definite description, but may refuse to act.

[Ed. Note.—For other cases, see United States Marshals, Cent. Dig. §§ 29–33; Dec. Dig. § 31.*]

This is a proceeding seeking the issuance of a writ of mandamus, compelling the United States marshal of this division of Alaska to execute an alias writ of restitution issued on December 12, 1913, out of the court of the United States commissioner of Juneau precinct, in the forcible entry and detainer case of Thomas H. Ashby v. John Hyde.

J. H. Cobb, of Juneau, for plaintiff.
John G. Heid, of Juneau, for defendant.

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

JENNINGS, District Judge.  There is very little contro-versy as to the facts.  The first point of law raised is em-bodied in the question:  Will mandamus lie to compel a sheriff or marshal to levy a writ of restitution?  This must be an-swered in the affirmative.  Freemont v. Crippen, 10 Cal. 211, 70 Am. Dec. 711, where the court say:

"The objection (that there is a plain, speedy, and adequate remedy at law) is not well taken.  *  *  *  The execution of final process is specially enjoined by law on defendant as a duty resulting from his office of sheriff, and in our opinion the plaintiff in this case has no plain, speedy, or adequate remedy in ordinary course of law, It is true he might sue defendant on his bond for the damages re-sulting from the nonperformance of his duty, but the possession of the property which has been adjudged to him can only be ob-tained by the present process, and is the only adequate remedy."

This was an opinion delivered by Judge Terry, and concur-red in by Justice Stephen J. Field.  It was on a statute identical with the Oregon statute, and has been cited with approval by the Oregon court.  Coos Bay R. R. v. Wieder, 26 Or. 465, 38 Pac. 338.  Our statute on mandamus is taken bodily from the Oregon act of 1862.

The next point made by defendant is that a motion should have been made in the commissioner's court, where the action was pending, before resorting to this court for mandamus. The answer readily suggests itself that an order of the com-missioner could not be more effective than the writ of restitu-tion already issued by the commissioner.  What is a writ of restitution but an order?  Defendant has already refused to execute the solemn writ, under the seal of the court.  What warrant is there for believing that a simple order of the com-missioner would be any more effective?  Defendant contends that, the defendant in the writ being John Hyde, he is not authorized to dispossess John H. Hyde, the father of defend-ant.  This question arose in the case of Freemont v. Crippen, just cited, but the court said:

"The verdict is conclusive that the plaintiff was peaceably in actual possession  *  *  *  at the time of the entry; that unlawful and forcible entry on his possession was made by defendants. *  *  *  The peaceable and actual possession of the plaintiff is in-compatible with the lawful possession of another."

Here the marshal had a writ issuing from a court of competent jurisdiction, directing him (1) to turn defendant out; (2) to let plaintiff in. The command of the writ is that "plaintiff have restitution of" the premises. How can it be executed unless everybody else is out of possession? If, by so doing, the marshal would incur liability, he can demand a bond; this he did and the bond was furnished; the bond having been furnished, the marshal has no discretion but to execute the writ as against everybody. 2 Freeman on Executions (2d Ed.) §§ 472–475, citing Hall v. Dexter, 3 Sawy. 434, Fed. Cas. No. 5,929.

The defendant says the description in the writ is uncertain, and that, being uncertain, he exercised his discretion by returning it unexecuted. The writ commands that restitution be had of "those certain lands and tenements occupied by defendant, and claimed by plaintiff, situated about one mile northwesterly from the town of Juneau, upon what is known as the Price homestead survey, lately tried before me (J. B. Marshall, United States commissioner), wherein Thomas H. Ashby was plaintiff and John Hyde was defendant." It is very clear that this writ is so defective, vague, and uncertain that, if it alone is to be considered, it does not apprise the officer of what he is to do, for it does not disclose what lands and tenements on the Price homestead are occupied by defendant and claimed by plaintiff. The fact that it singles out a certain class of lands and tenements, saying that they are on the Price homestead, would imply that it is not the Price homestead which is to be restored to plaintiff, but only some portion of the Price homestead. That being the case, is there any legal obligation on the officer to go behind the writ? Certain it is that he may, if he desires, seek for light elsewhere than in the writ, and if, finding any light, the light found be a true beacon and not an ignis fatuus, the officer will be safe, provided, however, the writ be not void, for in that case no one could recover any damages, because no actionable wrong would have been inflicted, but the question here is not as to the officer's power of choice but rather as to the measure of his obligation under the law, for it must not be lost sight of that

this is an application for mandamus, not an action for damages.

The action of mandamus will not lie unless there is a plain duty to be performed. Must the officer go behind the writ? If he must, mandamus may lie in this case; if there is no obligation on him to go behind the writ, mandamus will not lie in this case.

Murfree on Sheriffs, § 274, says:

"In executing an attachment, as in the service of other process, it is manifestly the duty of the sheriff to obey as implicitly as possible the mandate of the court which he serves. It is not his province, nor is it safe for him to be wise beyond what is written in his process."

And Freemen on Executions (2d Ed.) § 102, quoting from a New York case, says:

"To go beyond the process would 'lead to a new and troublesome issue, which would tend greatly to weaken the reasonable protection to ministerial officers. Their duties, at best, are sufficiently embarrassing and responsible; to require them to act or not at their peril, as' they may be supposed to know or not the technical regularity of the party or magistrate, seems to me an innovation upon previous cases, and against the reasons and policy of the rule."

And in the same section:

"He (the officer) must be governed and is protected by the process, and cannot be affected by anything he has heard or learned outside of it."

In Swan v. Gilbert, 175 Ill. 204, 51 N. E. 604, 67 Am. St. Rep. 208, the officer had in his possession the fruits of an execution against the partnership of W. A. Cave & Co. He also had an execution against W. A. Cave individually. The creditor in this last-mentioned execution insisted that the debt due him was a partnership indebtedness of W. A. Cave & Co., and called the officer's attention to the files and records and notes sued on, and insisted that the execution against W. A. Cave be let into the fruits of executions against W. A. Cave & Co. This the officer would not do, refusing to look beyond his writ, and the court said he had a right to rely on the language of the writ and need not go behind it. If the officer

is compellable to go behind the writ, how far need he go? Let it be conceded that he must go to the judgment. Going to the judgment in this case, we find that its operative part, its gist and its language, is:

"That plaintiff do have and recover of and from defendant the restitution of those certain lands and tenements, occupied ·by defendant and claimed by plaintiff, situated about one mile northeasterly from the town of Juneau, upon what is known as the Price homestead."

So, if the officer stops with the judgment, he knows no more than he knew before, for the judgment is as obscure as the writ. The judgment, however, contains a recital referring to the complaint, and finding its allegations to be true. Examining the complaint, then, we find it alleged in paragraph one:

"That the plaintiff rented to the defendant, on or about September 1, 1913, those certain premises on the Price homestead survey, about one mile northwesterly from the town of Juneau, on Gastineau Channel, and being all the said homestead survey, together with all buildings thereon."

It was for the unlawful detention of this property that plaintiff complained, praying restitution thereof.

So that, referring from the writ to the judgment and from the judgment to the complaint, it is easy enough to see what property is "claimed by plaintiff and claimed to be occupied by defendant," to wit, all the said homestead and all the buildings thereon. So that, if the marshal chose to go as far back as the complaint, he might have found out what property was claimed by plaintiff and claimed to be occupied by defendant; but does any duty devolve upon the marshal to look at the complaint to ascertain what property is meant by a writ, the description in which is so vague and uncertain as to be unintelligible? "Must he turn from the writ to the judgment, and, finding no sufficient light there, grope through the pleadings of a case in the hope that a ray may be encountered which will sufficiently illumine the darkness of the writ?"

It seems to me that if the marshal must—not may but must —look from the writ to the judgment, and thence through the pleadings of a case, to determine the meaning of the writ,

then he must be a good lawyer, and he must have abundant time at his disposal. Of course, the marshal is presumed to know his duty, and this involves necessarily some knowledge of the law; but it is easily conceivable that in many judgments, and in many long and involved complaints, an expert's investigation is necessary for the determination of the point involved. There are a dozen or more deputy marshals in this division, some located at points not easily accessible to the repository of the judgment and the pleadings. What is a marshal to do if he is far removed from that repository, or if, for any other reason, it be impracticable to examine those documents? In the case at bar it would not have been a burden on the marshal; it would not have been arduous; and it would not have been hazardous; but this court is not aware of any authority holding that the law in the matter is flexible enough to allow each case to stand upon its own circumstances, especially in a mandamus proceeding. On the other hand, such authorities as I have been able to examine in the limited time at my disposal seem to hold that the measure of obligation of the officer to the plaintiff in the writ and the court, whose officer he is, is contained in the writ itself.

The application for a peremptory writ of mandamus must be denied, and the alternative writ quashed, and costs awarded to the defendant.